UNITED STATES, Appellee

v

CHARLES M. MATOKA, Technical Sergeant,
U. S. Air Force, Appellant

16 USCMA 608, 37 CMR 228

No. 19,752

March 31, 1967

Lieutenant Colonel Milton E. Kosa argued the cause for Appellant, Accused. With him on the brief was Colonel Joseph Buchta.

Lieutenant Colonel Thomas J. Connolly argued the cause for Appellee, United States. With him on the brief was Colonel Emanuel Lewis.

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial in Korea convicted the accused of several offenses in violation of the Uniform Code of Military Justice, including "wrongfully converting to his own use" United States currency entrusted to him. The conversion offense was laid under Article 134 of the Uniform Code, supra, 10 USC § 934, and the specification alleged the act as a violation of 18 USC § 653. On this appeal,

608

the accused contends the wrongdoing of which he was convicted does not violate Section 653.

Regulations in effect in Korea provided that United States currency could not be used by military personnel for transactions in the civilian community. All United States currency was required to be exchanged for military payment certificates, and only these certificates could be used as the medium of exchange at military installations. Personnel arriving in Korea had to exchange the United States currency in their possession for military payment certificates within forty-eight hours of arrival; similarly, currency acquired after arrival in Korea had to be exchanged within forty-eight hours of receipt. Personnel departing from Korea were authorized to convert military payment certificates into United States currency at appropriate finance offices. No more than $200.00 in certificates could be exchanged for currency by any one person without special authorization.

The accused was a special disbursing agent at Kimpo Air Base, Korea. It was his responsibility to change currency for an equivalent amount of military payment certificates for personnel arriving in Korea; and, conversely, to exchange certificates for currency for personnel leaving Korea. For these purposes, he was entrusted with a fund of $70,000.00, consisting of United States currency and military payment certificates. He was required to keep a record of the individual transactions. The record listed the name of the person for whom the exchange was made, his organization, and the amount of the exchange. The person for whom the exchange was made signed his name on the line of the record relating to his transaction. Each type of exchange, that is, from currency to military payment certificates, and from certificates to currency, was maintained in a separate record. In addition to these records, the accused was required to keep a summary sheet to show the daily total of each kind of exchange.

On April 7, 1965, the accused's records were examined. They indicated a correct total amount for currency and certificates, but there were substantial discrepancies in the transactions in which certificates were exchanged for currency. The amount listed in the record for a number of these exchanges was greater than the amount actually submitted for exchange. In some cases, where the exchange was greater than $10.00, the number "1" had been placed in front of the original figure; the number "15" had been added to some transactions in which the amount was less than $10.00.[1] Thus, in the case of one individual who had submitted $18.25 in military payment certificates for United States currency, the record indicated the amount involved was "118.25." Recomputation of the transactions on the basis of the certificates actually submitted for exchange established that the United States currency balance for April 7 should have been $700.00 greater than the balance indicated in the accused's records; and, correspondingly, the balance of military payment certificates was overstated in the records by $700.00.

The accused contends the substitution of military payment certificates for United States currency was an exchange of dollar instruments of equivalent amounts and, therefore, not a conversion of public money within the meaning of 18 USC § 653. The statute reads as follows:

"Whoever, being a disbursing officer of the United States, or any department or agency thereof, or a person acting as such, in any manner converts to his own use, or loans with or without interest, or deposits in any place or in any manner, except as authorized by law, any public money intrusted to him; or, for any purpose not prescribed by law, withdraws from the Treasury or any authorized depositary, or transfers, or applies, any portion of the public money intrusted to him, is guilty of

[1] By limiting the alterations in this way, no exchange exceeded the authorized maximum of $200.00.

embezzlement of the money so converted, loaned, deposited, withdrawn, transferred, or applied, and shall be fined not more than the amount embezzled or imprisoned not more than ten years, or both; but if the amount embezzled is $100 or less, he shall be fined not more than $1,000 or imprisoned not more than one year, or both."

Section 653 is one of several statutes dealing with misuse of public funds by persons entrusted with them. See United States v Doyle, 3 USCMA 585, 14 CMR 3. Included in this group is Section 648, which prohibits "exchanges for other funds" by a person charged by act of Congress with safekeeping public moneys. Since Section 648 expressly deals with an exchange of funds, and Section 653 does not list an exchange as a prohibited act, the accused concludes Congress must have intended that a transaction of that type be prosecuted only under Section 648.[2] We need not explore the validity of the conclusion. Suffice it that Section 653 expressly provides that the offense it defines is committed, if a disbursing officer, without being authorized by law, "in any manner converts to his own use" public money entrusted to him.

It is said that no unlawful conversion occurs when one kind of legal tender is exchanged for another kind of legal tender in the same amount. Support for this view is sought in United States v Hayes, 8 USCMA 627, 629, 25 CMR 131. There, we held that, in the absence of special circumstances, it was not larceny "to take two five dollar bills in exchange for a ten dollar bill without the knowledge or consent of the owner" because legal tender is the same, whether represented by a single bill of a specified denomination or two bills which together total the same amount. Conversion,

however, is not synonymous with larceny or other felonious asportations of property. The word "convert" imports "knowing abuses and unauthorized uses of government property" which do not amount to larceny, embezzlement, or other appropriations of property resulting in total loss to the owner. Morissette v United States, 342 US 246, 272, 96 L ed 288, 72 S Ct 240 (1952); see also State v Gillum, 336 Mo 69, 77 SW2d 110 (1934). A criminal conversion results when, without authority and with felonious purpose, one entrusted with the property of another assumes to change its quality or nature or undertakes to deal with it contrary to the rights of the owner. State v Gillum, supra.

Military payment certificates and regular United States currency are not legal tender equivalents. Certificates can be used as a medium of exchange only by specified persons and only in specified places. Nor is there unlimited interchangeability. Certificates cannot be converted into United States currency in an amount in excess of $200.00 without special authorization. No such restrictions apply to United States currency. It is apparent, therefore, that even if military payment certificates are described as "legal tender," they are not of the same quality as United States currency. Consequently, unless authorized by law, the accused's withdrawal of currency from the funds entrusted to him and substitution of certificates therefor was a conversion within the meaning of Section 653. Cf. United States v Banning, 3 CMR 333, petition denied, 1 USCMA 708, 3 CMR 150. The evidence demonstrates the conversions effected by accused were without authority. The currency in his possession could be used only for one purpose, that is, to be exchanged for

---

[2] Apparently recognizing that an incorrect designation of the number of a statute does not necessarily invalidate a specification, appellate defense counsel note there is no allegation the accused was charged by an act of Congress with the obligation to keep public money and the instructions do not adequately cover an exchange of funds. See United States v Ekenstam, 7 USCMA 168, 171, 21 CMR 294; United States v Rowe, 13 USCMA 302, 312, 32 CMR 302.

certificates submitted by persons scheduled for departure from Korea. We conclude, therefore, that in substituting certificates for currency for his personal benefit, the accused converted the public money entrusted to him, in violation of Section 653.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.